IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INGRID BERG, ) | FILED:SEPTEMBER 26, 2008 |
| Plaintiff, ) | 08CV5530 |
| ) | JUDGE ANDERSEN |
| -v- ) | MAGISTRATE JUDGE NOLAN |
| ) | |
| ) | DAJ |
| ) | |
| eHomeCredit Corp., a New York ) | |
| corporation ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

NOW COMES Ingrid Berg, by and through her attorneys Jeffrey Strange & Associates, and complains of defendant eHomeCredit Corp as follows:

## PRELIMINARY STATEMENT

## JURISDICTION

1. Jurisdiction is proper pursuant to 28 U.S.C. §1332.

## PARTIES

2. Plaintiff Ingrid Berg is a citizen of the State of Illinois. The matter is controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

3. Defendant eHomeCredit Corp.(hereinafter "eHome") is a New York Corporation with its principal place of business located at 100 Garden City Plaza, GardenCity, New York, 11530. At all times relevant to the instant litigation eHome did business in the State of Illinois as a mortgage lender and

banker licensed by the State of Illinois' Division of Banking-Bureau of Residential Finance.

4. On July 10, 2008, eHome surrendered its Illinois residential mortgage license to the Bureau of Residential Finance, Division of Mortgage Banking Regulation.

## FACTS COMMON TO ALL COUNTS

5. On July 28, 2000 Ingrid Berg and her husband Stanley Berg bought the real property located at 2205 Kipling Lane, Highland Park, Illinois 60035 (hereinafter "Property") at a judicial sale, the judicial sale deed ("Judicial Deed") was signed on November 10, 2000 and the judicial sale deed was recorded on or about February 28, 2001. Title in the property was put in the name of Stanley and Ingrid Berg as tenants by the entirety. **Exhibit A.**

6. Subsequent to acquiring the Property, the Bergs executed a mortgage against the Property in favor of American Enterprise Bank (hereinafter "AEB"). The AEB Mortgage was recorded on February 28, 2001. **Exhibit B.**

7. In June 2004, Stanley Berg submitted a loan application to eHome for a loan to be secured by the Property.

8. On or about June 23, 2004 eHome approved Stanley Berg's application and thereafter Stanley Berg executed an eHome "Conventional Fixed Rate Prevailing Commitment" for a loan in the amount of $470,000. **Exhibit C.**

9. On or about May 24, 2004, Stanley Berg executed for eHome a

*"Loan Brokerage Disclosure Statement, Loan Brokerage Agreement, and Borrower Information Document"* ("eHome Brokerage Agreement")prepared by eHome. **Exhibit D.** The eHome Brokerage Agreement identifies Stanley Berg as the "Borrower" and "Applicant". It is signed solely by Stanley Berg as "borrower".

10. Pursuant to 38 Ill.Admin.Code 1050.1010, a written loan brokerage agreement is required pursuant to the Illinois Residential Mortgage Act of 1987:

"1050.1010 Loan Brokerage Agreement

> Before a mortgage loan applicant (also referred to in this Section as "borrower" or "customer") signs a completed residential mortgage loan application or gives the licensee any consideration, whichever comes first, **a loan brokerage agreement shall be required and shall be in writing and signed by both the mortgage loan applicant and a licensee whose services to the customer shall be loan brokering as defined at Section 1-4(o) of the Act**.
>
>   a) The loan brokerage agreement shall carry a clear and conspicuous statement that, upon request, a copy of the agreement shall be made available to the borrower or the borrower's attorney for review prior to signing.
>   b) Both the licensee's authorized representative and the borrower shall sign and date the loan brokerage agreement at the same time, and a copy of the executed agreement shall be given to the customer at the time of signing.
>   c) The loan brokerage agreement shall contain an explicit description of the services the licensee agrees to perform for the borrower and a good faith estimate of all consideration and remuneration to be exchanged in connection with those services. In the same section of the agreement shall be language, of prominence equal to or greater than the estimate, listing the types of situations or conditions that could materially affect the amounts indicated as a result of details that could not be known by the licensee at the time of signing the loan brokerage agreement. Examples of such situations or conditions include, but are not limited to, an appraised value different from that estimated by the borrower or credit obligations that the borrower fails to report.
>   d) The loan brokerage agreement shall carry a clear and conspicuous statement as to the conditions under which the borrower is obligated to pay the licensee.
>   e) The loan brokerage agreement shall provide that, if the licensee makes false or misleading statements in the agreement, the borrower may, upon written notice:
>  1) void the agreement;
>  2) recover monies paid to the broker for which no services have been performed; and
>  3) recover actual costs, including attorney fees for enforcing the borrower's rights under the loan brokerage agreement.
>    f) The loan brokerage agreement shall incorporate by reference the Loan Brokerage Disclosure Statement described in Section 1050.1020 of this Subpart.

      g) Except for a Rate-Lock Fee Agreement in accordance with Section 1050.1335, the loan brokerage agreement shall be the only agreement between the borrower and licensee with respect to a single loan; provider, however, that the licensee also shall provide to the customer any disclosure statement necessary to comply with Federal and State requirements, including, but not limited to, the Consumer Protection Credit Act ([15 USC 1601](#)), Equal Credit Opportunity Act (Title VII), and Truth in Lending Act (Title I) and Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505].

      h) The loan brokerage agreement shall contain the name and registration number of any Loan Originator assisting the licensee in performing services for the borrower.

11. On or about July 16, 2004, Stanley Berg executed a note (hereinafter "eHome Note") for the amount of $470,000. **Exhibit E.**

12. The signature page of the eHome Note identifies Stanley Berg as the sole "borrower" and Stanley Berg is the only "borrower" to execute the eHome Note as a "borrower".

13. Paragraph 11 of the eHome Note states as follows:

> "SECURED NOTE
>
> In addition to the protections given to the Note Holder[eHome] under this Note, **a Mortgage**, Deed of Trust or Security Deed(the "Security Instrument"), dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note."

14. On or about July 16, 2004, Stanley Berg executed a mortgage against the Property in favor of eHome. **Exhibit F.** (hereinafter eHome Mortgage) Pursuant to the terms of the eHome Note, the eHome Mortgage secured the eHome Note executed by Stanley Berg.

15. The eHome Mortgage document was created and prepared by eHome.

16. The first page of the eHome Mortgage identifies Stanley Berg as the "mortgagor" and the "borrower" and states that the "borrower" is giving eHome a mortgage stating:

> "This Security Instrument is given to EHOME CREDIT CORP, A NEW YORK CORPORATION which is organized and existing Under the laws of NEW YORK, and whose address is 211 STATION ROAD, MINEOLA, NY 11501("Lender")
>
> Borrower owes Lender the principal amount of FOUR HUNDRED SEVENTY THOUSAND AND NO/100THs Dollars(U.S. $470,000.00).
>
> This debt is evidenced by **Borrower's note** dated the same date as this Security Instrument("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 01, 2034.  This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest , and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of **Borrower's covenants and agreements** under this Security Instrument **and the Note**.  For this purpose, **Borrower does hereby mortgage, grant and convey to Lender the following described property located in Lake County, Illinois...."**(emphasis added).

17. On or about July 16, 2004, Stanley Berg executed a "Truth in Lending Disclosure Statement" (hereinafter "eHome TIL Disclosure") prepared by eHome for Stanley Berg. **Exhibit G.**  Ingrid Berg did not sign nor was she provided any TIL Disclosure by eHome as required by statute.

18. On or about July 16, 2004 Stanley Berg executed a RESPA

Settlement Statement(hereinafter "eHome RESPA Statement") prepared by eHome. **Exhibit H**.  The eHome RESPA Statement identifies Stanley Berg as the "[b]orrower".

19. On or about July 16, 2004 eHome prepared an "Assignment of Mortgage" (hereinafter "eHome Assignment") from eHome to Option One Mortgage Corporation(loan servicer).  The eHome Assignment identifies Stanley Berg as the sole mortgagor of the eHome Mortgage.  **Exhibit I.**

20. On or about July 16, 2004, eHome provided Stanley Berg with a HUD-1 "Aggregate Escrow Entry Sheet"(hereinafter "eHome HUD-1").  The eHome HUD-1 identifies Stanley Berg as the "[b]orrower".  Stanley Berg signed the eHome HUD-1 as "borrower".  **Exhibit J.**

21. On or about July 16, 2004 eHome delivered to Stanley Berg a HUD "Settlement Statement" (hereinafter "eHome Settlement Statement") prepared by eHome which identified Stanley Berg as the "[b]orrower".  **Exhibit K.**

22. The eHome Mortgage was not recorded until November 30, 2005, sixteen months after Stanley Berg executed the eHome Mortgage and Note and approximately six weeks after Stanley Berg had filed his Chapter 7 bankruptcy petition.

23. On October 15, 2005, Stanley Berg filed for protection under Chapter 7 of the Bank of the Bankruptcy Code. Stanley Berg's half interest in the Property is being administered by the Chapter 7 Trustee Ronald Peterson.

24. The Bankruptcy Trustee upon the filing of Chapter 7 by Stanley Berg on October 15, 2005, succeeded to the interest of Stanley Berg pursuant to 11 U.S.C. 541(a)(3).

25. The appointed Bankruptcy Trustee Ronald Peterson filed suit in Bankruptcy case 06 A 01026 in the United States Bankruptcy Court for the Northern District of Illinois seeking in part to void the eHome Mortgage as to Stanley Berg.

26. Judge Schmetterer of the Bankruptcy Court found that the eHome Mortgage was unenforceable as to the Bankruptcy Estate of Stanley Berg and its Trustee Ronald Peterson due to the "gross negligence" of eHome in failing to record the eHome Mortgage for sixteen months after the mortgage was executed by Stanley Berg and recording the eHome Mortgage in violation of the automatic stay.

27. The Trustee thereafter sought to and has been granted leave of the Bankruptcy Court to sell the Proper pursuant to 11 U.S.C. §363(b) and use the proceeds from Stanley Berg's one-half interest in the Property for the benefit of Stanley Berg's bankrupty estate.

28. Pursuant to 11 U.S.C. §363(j), the Trustee is to distribute to the spouse(Ingrid Berg) the appropriate portion of the proceeds of the sale, less certain administrative expenses.

29. eHome asked the Bankruptcy Court to direct the Trustee to distribute the proceeds of Ingrid Berg's one-half interest to be applied directly against the eHome Mortgage lien.

30. The Bankruptcy Court found that it did not have jurisdiction to adjudicate the controversy between Ingrid Berg and eHome regarding the eHome Mortgage in this case and therefore did not rule on the validity of the mortgage of eHome in regard to Ingrid Berg.

31. Therefore, the Bankruptcy Court ordered that the Trustee be allowed to sell the Property pursuant to 11 U.S.C. §§363(b) and (h) and that the net proceeds of Ingrid Berg's one-half interest in the Property "be deposited in hands of some neutral custodian or escrowee on contractual terms that may be enforced by a nonbankruptcy court with jurisdiction to determine the various claims against her interest in the Property."

32. That in a June 27, 2008 letter to Ingrid Berg's counsel, eHome though its attorney has taken the position that Ingrid Berg's ½ interest is subject to the eHome Mortgage. See the letter of from Miller Shakman and Beem attached hereto as **Exhibit L.**

### COUNT I-DECLARATORY JUDGMENT

33. Ingrid Berg incorporates paragraphs 1 through 37 of this Complaint as if fully stated in this paragraph.

34. Ronald Peterson, the Bankruptcy Trustee for the estate of Stanley Berg, will shortly seek leave of the Court to sell the Property and to segregate

and hold one half the sale proceeds until the validity of the eHome Mortgage as to Ingrid Berg is resolved.

35. eHome through its attorney is demanding that Ingrid Berg pay the entire mortgage from the proceeds of the 11 U.S.C. §363 bankruptcy sale of the Property asserting that Ingrid Berg is jointly and severally liable for Stanley Berg's eHome Note, nothwithstanding that she was not a party to the eHome Note and that her signature on the eHome Mortgage was for the limited purpose of waiving her homestead rights.

36. Pursuant to 735 ILCS 5/12-904:

**5/12-904. Release, waiver or conveyance**

§ 12-904. Release, waiver or conveyance. No release, waiver or conveyance of the estate so exempted shall be valid, unless the same is in writing, signed by the individual and his or her spouse, if he or she have one, or possession is abandoned or given pursuant to the conveyance; or if the exception is continued to a child or children without the order of a court directing a release thereof; but if a conveyance is made by an individual as grantor to his or her spouse, such conveyance shall be effectual to pass the title expressed therein to be conveyed thereby, whether or not the grantor in such conveyance is joined therein by his or her spouse. ***In any case where such release, waiver or conveyance is taken by way of mortgage or security, the same shall only be operative as to such specific release, waiver or conveyance***; and when the same includes different pieces of land, or the homestead is of greater value than $15,000, the other lands shall first be sold before resorting to the homestead, and in case of the sale of such homestead, if any balance remains after the payment of the debt and costs, such balance shall, to the extent of $15,000 be exempt, and be applied upon such homestead exemption in the manner provided by law.

37. The purpose of section 12-904 is to restrict a mortgage to specific release, waiver, or conveyance, or, in other words, to prevent a specific release,

waiver, or conveyance of the homestead for one purpose from being used for a different purpose.

38. The eHome Note for $470,000 was executed solely by Stanley Berg and to the extent the eHome Mortgage secured Stanley Berg's eHome Note, it was limited to Stanley Berg's ½ interest in the Property.

39. There is an actual claim or controversy between Ingrid Berg and eHome that is ripe for adjudication by this Court.

40. Ingrid Berg seeks a declaratory judgment from this Court pursuant to 28 U.S.C. §2201 declaring that she is not liable on the eHome Mortgage as a mortagee and that her signature on the eHome Mortgage was solely for the purpose of releasing her homestead rights.

WHEREFORE Plaintiff prays that the mortgages of Michael Frisbie and eHome be declared rescinded and void.


                                        */s/ Rod Radjenovich*


Rod Radjenovich
Jeffrey Strange & Associates
717 Ridge Road
Wilmette, IL 60091
Tel: 847-256-7377
Fax: 847-256-1681
jstrangelaw@aol.com

## Certificate of Service

I, Rod Radjenovich, an attorney, certify that on September 26, 2008 I caused a true and correct copy of **Ingrid Berg's Complaint at Law** to be filed electronically. Notice of this filing will be sent via US Mail with Proper Postage Prepaid on September 30, 2008 to the parties listed below. Parties may access this filing through the Court's system.

                                 /s/ Rod Radjenovich
                                 Rod Radjenovich

Via U.S. Mail, Proper Postage Prepaid

Philip E. Zegarelli, CEO
eHome Credit Corp
100 Garden City Plaza
Garden City, New York 11530

Roger J. Perlstat
Miller Shakman & Beem LLP
180 N. LaSalle Street #3600
Chicago IL 60601

CT Corporation System
Registered agent for eHome Credit Corp.
208 S. LaSalle Street #814
Chicago IL 60604